## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Shaylei Johnson,**

**Plaintiff,**

**v.**                                                   **Case No. 20-cv-2082-JWL**

**Norton County Hospital and**
**Norton County Hospital Board of Trustees,**

**Defendants.**

## MEMORANDUM & ORDER

Plaintiff Shaylei Johnson filed this lawsuit against her former employer asserting claims of

failure to accommodate, disability discrimination and retaliation in violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments

Act of 2008 ("ADAAA"), and claims of interference and retaliation in violation of the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.[1]  This matter is presently before the court

on defendant's motion for summary judgment on all claims (doc. 80) and plaintiff's motion for

partial summary judgment (doc. 82).[2]  Defendant has also filed an unopposed motion to modify

---

[1] Throughout this opinion, the court uses the singular "defendant" to collectively refer to the Hospital defendants.

[2] Defendant has moved to strike (doc. 85) plaintiff's proposed summary judgment facts contained within her motion for partial summary judgment.  The motion is denied.  The court largely denies plaintiff's motion for partial summary judgment, rendering most of defendant's motion to strike moot.  To the extent the court grants the motion for partial summary judgment, it does so only on defendant's after-acquired evidence defense.  With respect to that aspect of the motion, plaintiff cites only four statements of fact and none of defendant's objections to those facts has merit.  It objects to Statements of Fact 309, 310 and 311 as "redundant and repetitive," which they are clearly not, and objects to Statement of Fact 312 as not cited in plaintiff's summary judgment brief, which it clearly is.  *See* ECF doc. 82, p. 68.

the pretrial order to change the trial location (doc. 79).  As explained below, defendant's motion for summary judgment is granted on plaintiff's hostile work environment claim; granted on plaintiff's ADA retaliation claims other than those based on the termination of plaintiff's employment;  granted on plaintiff's FMLA claims other than those based on the termination of plaintiff's employment; and is otherwise denied.  Plaintiff's motion for partial summary judgment is granted on the after-acquired evidence defense and is otherwise denied.  The motion to modify the pretrial order to change the trial location is denied.

I.      **Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to the nonmoving party.  Defendant hired plaintiff Shaylei Johnson as a Dietary Manager in January 2015.  In that role, plaintiff was responsible for conducting dietary and nutritional assessments of patients and counseling patients consistent with those assessments; performing weekly patient visits; supervising employees in the Dietary department; and maintaining a high standard of hospital food service.  There is little dispute that plaintiff's regular presence at the hospital was essential to her job.

In 2017, Gina Frack became the CEO of the hospital and plaintiff's direct supervisor.  At all times relevant to this lawsuit, Shannan Hempler was the hospital's Director of Human Resources.  Moreover, the hospital, beginning in 2017, contracted with HR Partners, a human-resources consulting firm, for employment-related services including ADA and FMLA compliance matters.  Erin Brown and Kristina Dietrick were both associated with HR Partners and consulted with the hospital about plaintiff's employment on numerous occasions.

2

The record reflects that the hospital approved various medical leave requests for plaintiff over her employment. In 2015, the hospital approved pregnancy-related leave from June 2015 through August 2015 and additional medical leave in November 2015. In 2017, the hospital approved 12 weeks of FMLA leave for pregnancy, with an additional two weeks of leave after plaintiff's FMLA leave expired. At some point in 2017, plaintiff was diagnosed with Crohn's disease. There is no indication in the record that plaintiff sought leave relating to her Crohn's disease at any time until August 2018. Beginning in August 2018, plaintiff occasionally used vacation days and sick leave to manage symptoms of her Crohn's disease. On August 22, 2018, plaintiff submitted a doctor's note to Ms. Frack stating that plaintiff needed three consecutive days off work. Ms. Frack forwarded that email to Ms. Hempler, asking whether plaintiff "was now [sic] FMLA?" She also questioned whether plaintiff had "any benefit time left to use" and stated that she "could not justify a department supervisor/manager position that isn't even working enough that she has to take leave without pay." Ms. Hempler advised Ms. Frack that plaintiff had FMLA time available, that she only had a "couple" hours of sick leave remaining, and that she had only three vacation hours remaining. Ms. Frack responded, "Just keep me posted on this as to where her hours really end up."

On September 25, 2018, plaintiff provided the hospital with a doctor's note to excuse her absences on September 24, 2018 and September 25, 2018 for "medical treatment." Plaintiff's attendance record, maintained by Ms. Hempler, indicates that plaintiff's absences on those days were related to her Crohn's disease. At some point in or around December 2018, defendant began actively consulting with HR Partners about plaintiff's eligibility for FMLA leave and Ms. Hempler advised plaintiff that she was eligible for FMLA leave relating to her Crohn's disease.

3

It is unclear from the record what triggered this conversation.  In mid-December 2018, Ms. Hempler gave plaintiff a Certification of Health Care Provider form for completion by plaintiff's medical provider.  Shortly after that time, Ms. Frack emailed Erin Brown and Kristina Dietrick at HR Partners, asking "Could one of you help me write out the plan of improvement for Shay?  This whole thing of not working the full 36 hours/week has gone on a long time."

On December 19, 2018, the hospital received the Certification of Health Care Provider that plaintiff's medical provider, Dr. LaVelle Ellis, had filled out.  Three weeks later, on January 9, 2019, the hospital returned the form to Dr. Ellis stating, without explanation, that the form was incomplete and that a completed form should be returned to the hospital within 7 days.  On January 14, 2019, Dr. Ellis sent an updated version of the Certification to the hospital.  Ms. Brown at HR Partners advised the hospital that the form was still incomplete.  During this same time period, plaintiff was experiencing a flare-up of her Crohn's disease.  She sought medical treatment on January 4, 2019; January 9, 2019; and January 11, 2019, when she was briefly admitted to the hospital and was ultimately scheduled for a colonoscopy on January 17, 2019.  On January 13, 2019, plaintiff submitted a doctor's note indicating that she would be off work until January 21, 2019 and it appears that plaintiff returned to work on January 21, 2019.  In the meantime, on January 17, 2019, the hospital provided an FMLA Designation Notice to plaintiff stating that additional information was necessary, including certification as to whether plaintiff was able to perform her job functions and whether plaintiff had to be absent from work during flare-ups.  The Designation Notice also noted the need for clarification on the form, highlighting that the form confusingly estimated that plaintiff would experience one flare-up per week lasting 10 days per episode over the next six months.

On January 21, 2019, the hospital received a third version of the Certification of Health Care Provider from Dr. Ellis. The hospital, with input from HR Partners, accepted this Certification as complete despite the fact that it did not clarify or correct the estimate that plaintiff would experience one flare-up per week lasting 10 days per episode over the next six months. At no time did the hospital seek to discuss plaintiff's health conditions or limitations with Dr. Ellis or plaintiff. The form indicated Dr. Ellis's belief that plaintiff needed a reduced or part-time work schedule of three days per week from "current" through May 2019 but that plaintiff would likely need a one-month period of continuous leave, presumably beginning immediately. Again, the hospital did not seek to clarify this apparent inconsistency with Dr. Ellis or plaintiff.

Based on the Certification, HR Partners recommended designating all absences relating to plaintiff's Crohn's disease as FMLA leave retroactive from August 2018. HR Partners also recommended starting a discussion about plaintiff's "request to work a three (3) day work week as it was confirmed by the doctor's paperwork." It is unclear from the record whether or when plaintiff, independent from the Certification, had requested a three-day work schedule. In any event, Ms. Frack, after consulting with Karen Bunnell, a registered dietician and long-time independent contractor with the hospital, determined that a Monday-Wednesday-Friday reduced work schedule for plaintiff would best accommodate the hospital's staff and patients as well as plaintiff's job duties. Dr. Ellis testified that when she completed the form, she did not intend the hospital to put plaintiff on a rigid schedule. The record does not reflect whether the hospital ever considered or discussed with HR Partners Dr. Ellis's indication that a period of continuous leave would be necessary.

On January 23, 2019 and January 24, 2019, the hospital and HR Partners worked together to establish "talking points" to use with plaintiff concerning "FMLA expectations," including Ms. Frack's plan for a reduced schedule of eight-hour workdays on Mondays, Wednesdays and Fridays. The talking points also indicated that plaintiff would be utilizing 6 hours of FMLA leave every Tuesday and Thursday. No one discussed with plaintiff whether a Monday-Wednesday-Friday would accommodate plaintiff's medical condition. On Friday, January 25, 2019, Ms. Frack and Ms. Hempler met with plaintiff to discuss her FMLA leave. Curiously, they provided an FMLA Designation Notice that indicated her FMLA request was approved and that "because the leave you will need will be unscheduled, it is not possible to provide the hours, days, or weeks that will be counted against your FMLA entitlement at this time." Ms. Frack and Ms. Hempler, however, verbally advised plaintiff that her schedule would include eight-hour workdays on Mondays, Wednesdays and Fridays and that she would be taking FMLA leave on Tuesdays and Thursdays. Plaintiff strongly objected to this schedule. In that same meeting, Ms. Frack advised plaintiff that the hospital would not provide her a letter of support for her to serve on a national board for the Association of Nutritional and Foodservice Professionals.

While defendant asserts that plaintiff "wanted to pick her own workdays and change them whenever she needed," plaintiff's evidence suggests that she wanted to be able to work when she was medically able and that she only needed intermittent leave for scheduled medical appointments and unscheduled leave for flareups as necessary, consistent with the written FMLA Designation Notice that the hospital gave to her. When plaintiff stated to Ms. Frack and Ms. Hempler that she did not want to stay home on FMLA leave when she was capable of working, they told her that the hospital was required to proactively protect her FMLA days and that she was

6

not permitted to work on Tuesdays or Thursdays unless she submitted a new Certification of Health Care Provider.  At that point, plaintiff asked to forego FMLA leave entirely in favor of returning to her regular work schedule.  The hospital declined in the absence of a new certification.

Over the weekend, plaintiff exchanged various text messages with Ms. Frack and Ms. Hempler about her desire, intention and ability to work on Tuesday, January 29, 2019.  The hospital reiterated its position that plaintiff could not work on Tuesday without a new certification and plaintiff urged that her FMLA paperwork did not contain a rigid schedule, that she was physically able to work, and that she had duties to perform.  According to the hospital, Ms. Dietrick advised Ms. Frack that permitting plaintiff to work on a day designated as FMLA leave might expose the hospital to liability for FMLA interference.  Ms. Frack decided to terminate plaintiff's employment if plaintiff, as expected, came to work on Tuesday, January 29, 2019.  The hospital and HR Partners put together a separation checklist to prepare for the termination of plaintiff's employment.  Plaintiff came to work on Tuesday, January 29, 2019 and Ms. Frack terminated her employment.  After plaintiff's employment was terminated, the hospital discovered that plaintiff was using defendant's computers and other devices to make disparaging comments about defendant and its managers; forwarding confidential information (such as records and passwords) to plaintiff's personal email account for personal purposes; and using defendant's email system for personal purposes.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.    Summary Judgment Standard

7

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party.  *Banner Bank v. First American Title Ins. Co*., 916 F.3d 1323, 1326 (10th Cir. 2019); *Boyz Sanitation Serv., Inc. v. City of Rawlins*, 889 F.3d 1189, 1195 (10th Cir. 2018) ("Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor.").

## III.    Plaintiff's ADA Claims

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  The statute defines discrimination to include not making reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability. *Id.* § 12112(b)(5)(A). The ADA also prohibits employers from retaliating against an employee for engaging in certain protected activities, including requesting a reasonable accommodation. 42 U.S.C. § 12203(a); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).

In the pretrial order, plaintiff asserts three ADA claims, alleging that defendant failed to accommodate her disability; discriminated against her because of her disability by creating a hostile work environment and terminating her employment; and retaliated against her for requesting an accommodation. Defendant moves for summary judgment on all claims. Plaintiff moves for summary judgment on three issues—that her Crohn's disease constitutes a disability within the meaning of the ADA; that defendant refused to participate in the interactive process contemplated by the ADA; and that she was qualified to perform her job at all times. As will be explained, defendant's motion for summary judgment is granted on plaintiff's hostile work environment claim and plaintiff's ADA retaliation claims other than those based on the termination of plaintiff's employment and is otherwise denied. Plaintiff's motion for partial summary judgment is denied.

A.    *Failure to Accommodate Plaintiff's Disability*

To establish a prima facie failure-to-accommodate claim, plaintiff must show that she was disabled; she was otherwise qualified; she requested a plausibly reasonable accommodation; and defendant refused to accommodate her disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020) (citations and footnotes omitted). This is not onerous. *See id.* (citing *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015)). If plaintiff establishes a prima facie

claim, the burden shifts to defendant "to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (quoting *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018)).  If defendant meets its burden, then summary judgment is appropriate for defendant unless plaintiff "then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of . . . her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.* at 1005-06 (citations omitted).[3]

### 1.  Disability

To proceed with her failure-to-accommodate claim, plaintiff must establish that she has a "disability." She may do this by showing she (1) has "a physical or mental impairment that substantially limits one or more of [her] major life activities"; (2) has "a record of such an impairment"; or (3) was "regarded as having such an impairment." 42 U.S.C. § 12102(1). Defendant does not move for summary judgment on this issue but has also not conceded or stipulated that plaintiff has a disability for purposes of the ADA.  Plaintiff, however, moves for summary judgment in her favor, asserting that the undisputed facts demonstrate as a matter of law that she was disabled under all three statutory definitions of "disability."  The motion is denied.

---

[3] To the extent the pretrial order can be construed as setting forth a discrete claim of failure-to-accommodate based solely on defendant's alleged failure to participate in the interactive process contemplated by the ADA, summary judgment in favor of defendant is warranted.  *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1207 n.29 (10th Cir. 2018) ("[O]ur case law is clear that an employee cannot maintain a failure to accommodate claim based solely on an employer's failure to engage in the interactive process.").

Plaintiff has not shown the absence of a disputed issue of fact as to whether she has a physical impairment that substantially limits one or more of her major life activities. Her argument primarily shows that Crohn's disease "can" affect a person's major life activities in a variety of ways and "can" substantially limit a person's daily activities. Plaintiff also lists a range of symptoms that an individual with Crohn's disease "can" exhibit. Plaintiff has not marshaled the evidence in the record that might (and likely does) show the substantially limiting effect that plaintiff's Crohn's disease in fact has on her own major life activities. She also relies on the deposition testimony of Ms. Hempler, who acknowledged that plaintiff "could" have an impairment that "could" qualify under the ADA. This testimony, of course, fails to establish that plaintiff had an actual disability for purposes of the ADA. Similarly, her reliance on Ms. Frack's testimony that plaintiff had difficulty performing "some" functions of her job during flare-ups fails to establish that plaintiff had an actual disability for purposes of the ADA.

Plaintiff's arguments that she has a record of a disability and that defendant regarded her as disabled also fail. Plaintiff summarily states that "Johnson has a record of impairment" and then offers only a string citation of 18 separate statements of fact, some of which do not contain a reference to the record. That is the full extent of her argument as to a record of a disability. Her argument that she was regarded as disabled does not even reference any factual statements. She states only that defendant "by refusing to permit Johnson to work, regarded her as having a disability." Plaintiff has not attempted to marshal the evidence in any way that appropriately frames these issues for the court and the court is unwilling to parse through the parties' combined 755 pages of submissions (excluding exhibits) in an effort to resolve these issues in plaintiff's

favor.  In the absence of any work from plaintiff to show the absence of a disputed issue of fact on whether she has a disability for purposes of the ADA, the court denies the motion.[4]

2.      *Otherwise Qualified*

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (emphasis added).  A "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8).  In its motion for summary judgment, defendant asserts that plaintiff cannot establish this element of her prima facie case because no reasonable jury could conclude that plaintiff, with or without reasonable accommodation, could perform the essential functions of her job.[5]

Neither party disputes that plaintiff was performing the essential functions of her position through mid-January 2019.  And plaintiff does not dispute that, starting in mid-January 2019, she

---

[4] The court is equally frustrated by defendant's response to plaintiff's motion for summary judgment on these issues.  Defendant simply asserts that it is "unnecessary" for the court to resolve this issue at this juncture because plaintiff's ADA claims clearly fail for other reasons (but, as explained herein, they do not) and that plaintiff has not cited one case in which a plaintiff has successfully moved for summary judgment on the issue of disability.  Of course, plaintiff's failure to cite such a case would not, standing alone, be a reason to deny summary judgment if she were able to show that it was otherwise appropriate.  Moreover, such cases do exist.  *See, e.g., Coker v. Enhanced Senior Living, Inc*., 897 F. Supp. 2d 1366, 1376 (N.D. Ga. 2012) (granting plaintiff's contested motion for summary judgment on issue of disability under the ADA); *Eldredge v. City of St. Paul*, 809 F. Supp. 2d 1011, 1030 (D. Minn. 2011) (same).

[5] In her own motion for summary judgment, plaintiff asserts that the evidence demonstrates as a matter of law that she was "qualified to perform her job" for purposes of the ADA.  But her argument is limited to her ability to perform the essential functions of her job without accommodation until some point in January 2019.  She does not analyze her ability to do so going forward from that time.  That is an issue she addresses only in response to defendant's motion for summary judgment.  The court, then, denies plaintiff's motion on this issue.

needed an accommodation for some period of time to enable her to continue performing the essential functions of her job.[6]  Thus, to establish the second element of her prima facie case, plaintiff must show that there was a reasonable accommodation that would have enabled her to perform the essential functions of her job at the time she was terminated or soon thereafter.  *Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020).  As explained below, plaintiff has come forward with sufficient evidence to create a jury question on whether a reasonable accommodation was available.  A reasonable jury, then, could find that she was otherwise qualified.  *See id.*

3.    *Requesting a Plausibly Reasonable Accommodation*

To meet the third element of her prima facie failure-to-accommodate claim, plaintiff must establish that she requested a plausibly reasonable accommodation. The phrase "reasonable accommodation" refers to those accommodations which "presently, or in the near future, enable the employee to perform the essential functions of h[er] job." *Aubrey*, 975 F.3d at 1007 (quoting *Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1205 (10th Cir. 2018)).  Examples of a reasonable accommodation may include job restructuring, part-time or modified work schedules, or

---

[6] Defendant argues that plaintiff, in her complaint, made a "judicial admission" that she was unable to perform the essential functions of her job in early 2019, thereby foreclosing any argument that she was "otherwise qualified" for the purposes of the ADA.  The court rejects this argument for two reasons.  First, the allegations in the complaint have been superseded by the pretrial order. *See Burke v. Regalado*, 935 F.3d 960, 1041 (10th Cir. 2019).  Second, plaintiff's statement in her complaint that she was unable to perform the essential functions of her job did not indicate whether any reasonable accommodations might enable her to perform those functions at the time of her termination or soon thereafter.  In a related vein, defendant argues that plaintiff cannot argue that she is otherwise qualified because Dr. Ellis, in the Physician Certification, checked "yes" in response to the question "Is the employee unable to perform any of his/her job functions due to the condition?"  This has no bearing on the court's analysis of plaintiff's ADA claim.

13

reassignment to a vacant position.  *Id.* (citing 42 U.S.C. § 12111(9). "The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position." *Id.* (quoting *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)).

In its motion for summary judgment, defendant first advances a half-hearted argument that questions whether plaintiff in fact ever requested an accommodation for her Crohn's disease. According to defendant, plaintiff objected to the Monday-Wednesday-Friday work schedule not based on any medical concerns but based on business concerns and her inability to meet certain deadlines and attend critical weekly meetings.  By focusing solely on plaintiff's initial objection to the Monday-Wednesday-Friday schedule, defendant ignores other evidence in the record from which a jury could reasonably conclude that plaintiff requested accommodations to assist her in managing her symptoms of Crohn's disease, including intermittent FMLA leave to attend medical appointments and other FMLA leave to manage flare-ups as necessary.  This argument, then, is rejected.[7]

Defendant's primary argument in support of its motion for summary judgment is that plaintiff wanted to "set her own schedule" or "work from home," thereby negating her position's essential function of predictable, physical attendance at the hospital.  There is little evidence supporting the idea that plaintiff asked defendant to waive the physical attendance requirement for her or wanted to work from home whenever it suited her.  Viewed in her favor, the evidence

---

[7] In any event, plaintiff testified that when defendant presented her with the Monday-Wednesday-Friday work schedule, she advised them that she had a Wednesday appointment with a medical specialist in Denver, Colorado in February 2019 that would conflict with that work schedule. According to plaintiff, she was advised that she needed to take sick leave for that appointment.

suggests that, at least as a starting point, she wanted intermittent FMLA leave for scheduled medical appointments with some "unscheduled" FMLA leave as needed for flare-ups—the precise accommodation that defendant approved on its Notice of Designation of Leave.  Those requests, then, triggered defendant's duty to engage in good faith with plaintiff in an interactive process to determine her limitations and consider whether the accommodations she requested, or "perhaps others that might come to light during this interactive process," would enable plaintiff to return to work.  *Id.* at 1007.  As the Circuit has recognized, this interactive process requires the participation of both the employer and the employee, because both parties will typically possess different information, "all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job."  *Id.*

Here, there is evidence from which a reasonable jury could conclude that defendant did not engage in this interactive process.  The record supports the conclusion that Ms. Frack, who was already concerned about the amount of leave plaintiff had used, unilaterally imposed the rigid Monday-Wednesday-Friday schedule and was not open to alternative arrangements or to any discussion with plaintiff about potential alternatives.  Ms. Frack testified that she did not talk to Ms. Hempler or plaintiff at all about the Monday-Wednesday-Friday schedule prior to presenting that schedule to plaintiff; that she was advised by HR Partners that she could set a firm schedule; and that, for the most part, the matter was decided before she met with plaintiff on January 25, 2019.  *See Aubrey*, 975 F.3d at 1008 (jury could find that employer made no effort to discover exactly what plaintiff's limitations were at the time and, accordingly, that employer failed to engage in interactive process); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2014) (considering fact that employer did not inquire about disabled employee's restrictions as evidence

15

that employer failed to participate in interactive process).   While Ms. Frack testified that plaintiff did not offer any alternatives when presented with the Monday-Wednesday-Friday schedule but only refused to comply with it, the record does not necessarily support that assertion.   Ms. Hempler's notes from the January 25, 2019 meeting indicate that plaintiff offered to work from home on Tuesdays and Thursdays and, in Ms. Hempler's words, "wanted to set her own schedule." Text messages between Ms. Hempler and plaintiff indicate plaintiff's suggestion that she be permitted to "flex" her time so that she could work when she was physically able to do so.   Even Ms. Frack testified that plaintiff, when presented with the rigid schedule, asked to be taken off FMLA leave entirely in lieu of having a forced, rigid schedule.   While plaintiff's suggestions may or may not have been reasonable within the meaning of the ADA, the point is that a jury could conclude that plaintiff was attempting to engage in the interactive process necessary to determine whether reasonable accommodations were available.

Moreover, viewed in the light most favorable to plaintiff, the evidence also suggests that Ms. Frack was not going to discuss any alternatives with plaintiff even if plaintiff had laid those alternatives out in detail.  Ms. Frack repeatedly testified that the rigid Monday-Wednesday-Friday schedule "matched" plaintiff's FMLA Physician Certification and that she could not change that schedule unless and until plaintiff provided a new certification from her doctor.  But a reasonable jury could reject defendant's suggestion that the three-days-per-week schedule was imposed by plaintiff's medical provider in the January 21, 2019 Physician Certification.  That certification is internally inconsistent in several places, calling into question whether defendant relied on that document in good faith.  For example, plaintiff's medical provider noted on the form that plaintiff's Crohn's disease would cause episodic flare-ups and the provider estimated that those

16

flare-ups would occur one time per week for a duration of 10 days each over the next six months—an estimate that would render her totally incapable of working at any time during that six-month period.  The provider also noted that plaintiff needed a part-time or reduced schedule because of her condition, but also noted that she needed a "continuous period" of leave of "likely" one month.  In any event, plaintiff's provider did not suggest on the Certification that plaintiff's condition required a rigid three-day-per-week work schedule and did not suggest that she needed a reduced schedule indefinitely or on a permanent basis.  A jury could reasonably conclude from the Certification that plaintiff's medical provider was recommending a reduced leave schedule averaging three days of work per week until May 2019.   Suffice it to say, a reasonable jury could conclude that defendant failed to meet its obligation of engaging with plaintiff in good faith to identify her limitations and to explore whether there was an accommodation that would enable plaintiff to return to work and perform the essential functions of her job.  A jury could also conclude that defendant, by blindly adhering to the Physician Certification that arguably did not recommend a rigid schedule, was affirmatively avoiding having to consider other possible accommodations.

Regardless of the evidence from which a jury could conclude that defendant did not meet its obligation to participate with plaintiff in the interactive process, plaintiff must still establish that there was a reasonable accommodation that would have enabled her to perform the essential functions of her job at the time of her termination or soon thereafter.  *Aubrey*, 975 F.3d at 1009-1010.  As the Circuit has recognized, however, an employer who fails to engage in the interactive process faces a difficult task on summary judgment because "it is not likely that [it] will be able

to establish on summary judgment the absence of a disputed fact as to the existence of a reasonable accommodation." *Id.* at 1010. (citations omitted).

Whether an accommodation is reasonable is a mixed question of law and fact. *See id.* (citing *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1267 (10th Cir. 2015)). To determine whether an accommodation is reasonable, the Tenth Circuit utilizes another burden-shifting formula. *See id.* (citations omitted). First, the employee "need only show that an accommodation seems reasonable on its face, i.e., ordinarily or in the run of cases." *Id.* (citations and quotations omitted). "A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function at issue." *Id.* (citing 29 C.F.R. § 1630.2(o)(1)(ii)). If the employee presents a facially reasonable accommodation, the burden of production then shifts to the employer to present evidence of its inability to accommodate. *Id.* The employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* (citations and quotations omitted). If the employer presents such evidence, the employee has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Id.*

The court, then, turns to the accommodations suggested by plaintiff as supported by the evidence viewed in the light most favorable to her. As noted earlier, the evidence shows that plaintiff wanted intermittent FMLA leave for scheduled medical appointments to manage her Crohn's disease and, perhaps, unforeseeable FMLA leave as needed for flare-ups. While employers are not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time, it is well settled that a request for leave may constitute a reasonable

18

accommodation. *Id.* at 1010-11; *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ("It is well settled that a request for leave may lead to a 'reasonable' accommodation—such a request may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job (i.e. attend work) in the future."). A request for FMLA leave to which an employee is otherwise entitled is facially reasonable. *See Smith v. Millennium Rail, Inc*., 241 F. Supp. 3d 1183, 1201 (D. Kan. 2017) (employee's FMLA leave request was reasonable under ADA); *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017) (assuming without deciding that the plaintiff's request for intermittent FMLA leave also constituted a request for a reasonable accommodation under the ADA) (citing 29 C.F.R. § 825.702(c)(2)).

Defendant asserts that plaintiff's request—which it characterizes as one to "work from home" or "set her own schedule"—is unreasonable because plaintiff's medical provider indicated on the Certification that plaintiff's condition would last a "lifetime," her condition was deteriorating, and they could not waive the physical attendance requirement of the job.[8] But plaintiff's request was not open-ended. The Certification indicated that plaintiff would need modifications until May 2019 and, in any event, plaintiff would have exhausted her FMLA leave after 12 weeks of leave. *See Smith*, 241 F. Supp. 3d at 1201 ("Although Smith's leave request

---

[8] In fact, plaintiff's condition greatly improved after January 2019. Dr. Ellis testified that the findings from plaintiff's January 17, 2019 colonoscopy were much less severe than she anticipated and that she would have filled out the Physician Certification differently if she had had those findings at the time. Moreover, plaintiff testified that she obtained new employment in August 2019 and that she missed "maybe four days" of work between August 2019 and May 2021 due to her Crohn's disease.

indicated that he did not know when he would return, it is uncontroverted that he was specifically requesting FMLA leave. Under the FMLA, Smith was entitled to no more than 12 weeks of leave. Thus, viewed in Smith's favor, the facts show that he was requesting leave for 12 weeks at most when he submitted his FMLA paperwork. Such a request is reasonable under the ADA."); *Smith v. Diffee Ford–Lincoln–Mercury*, 298 F.3d 955, 967 (10th Cir. 2002) ("Because [the employee] had requested and taken no more leave than the FMLA already required that she be given, we cannot conclude that the length of time was unreasonable.").   And while plaintiff may have suggested working from home or coming into work on days that defendant had designated as FMLA leave, the evidence supports the conclusion that she suggested that alternative as a way to perform her job on those days when defendant intended to require her to take FMLA leave regardless of whether it was medically necessary.   These facts, and the procedural posture of the case, distinguish this case from the cases cited by defendant in support of its motion. *See Unrein v. PHC-Fort Morgan, Inc*., 993 F.3d 873, 874 (10th Cir. 2021) (after bench trial, district court concluded that plaintiff's requests to work a flexible schedule dependent on her ability to secure rides or to telecommute full-time were not reasonable); *Bethscheider v. Westar Energy*, 820 Fed. Appx. 749, 753 (10th Cir. 2020) (affirming district court's conclusion that plaintiff, who had not worked long enough to be eligible for FMLA leave, was not a "qualified individual" for purposes of ADA because suggested accommodations of flexible schedule, the option to work from home, and/or intermittent leave whenever she experienced migraines were unreasonable as a matter of law on the summary judgment record); *Winston v. Ross*, 725 Fed. Appx. 659, 663 (10th Cir. 2018) (requested accommodation of using leave donated by other employees would not enable plaintiff to fulfill the essential function of physical attendance because she provided no evidence as to

when she expected her medical condition to improve to the point where she would be able to perform the essential functions of her job); *Crowell v. Denver Health & Hosp. Auth.*, 572 Fed. Appx. 650, 659 (10th Cir. 2014) (after trial, district court determined that suggested accommodation of leaving work during flare-ups of shoulder injury was unreasonable where, among other things, plaintiff was unable to testify to the length of time she would need off for a flare-up or how often they would occur and plaintiff's medical provider testified that such leave was unnecessary).

A reasonable jury, then, could find that plaintiff, in January 2019, requested a plausibly reasonable accommodation and that the accommodation did not provide an undue hardship to defendant. *See Aubrey*, 975 F.3d at 1011 (employee's request for additional leave after expiration of FMLA leave was facially reasonable where medical providers had indicated she would be able to return to work in approximately three months). This claim, then, survives defendant's motion for summary judgment.[9]

### 4.    *Refusal to Accommodate Disability*

Defendant asserts that it never refused a request for a reasonable accommodation—it refused plaintiff's request for an unreasonable accommodation. But because there is evidence from which a reasonable jury could conclude that plaintiff requested a reasonable accommodation that defendant rejected, plaintiff has established this element of her prima facie case.

---

[9] To the extent plaintiff moves for summary judgment on defendant's refusal to engage in the interactive process, this issue must be resolved by the jury in connection with its assessment of plaintiff's failure-to-accommodate claim.

5. *Summary*

To summarize, plaintiff has presented sufficient evidence to establish a prima facie failure-to-accommodate claim.  This shifts the burden to defendant "to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer."  *Aubrey*, 975 F.3d at 1013-14 (quoting *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018)).  Defendant has neither "conclusively rebutted" plaintiff's prima facie evidence nor asserted an affirmative defense.[10]  This claim, then, must proceed to trial.

B.    *Discrimination Against Plaintiff Because of her Disability*

Plaintiff also asserts that defendant discriminated against her on the basis of her disability by creating a hostile work environment based on her disability and terminating her employment based on her disability.  *See* 42 U.S.C. § 12112(a) (prohibiting discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees").  Unlike her failure-to-accommodate claim, to recover on her discrimination claim, plaintiff must prove that defendant acted with a discriminatory animus against her because she had a disability. *See Aubrey*, 975 F.3d at 1014 (citing *Lincoln*, 900 F.3d at 1204).

---

[10] In the pretrial order, defendant asserts that plaintiff's proposed accommodations would have created an "undue burden" on defendant.  While this affirmative defense is preserved for trial, defendant has not advanced it at the summary judgment stage.

Where, as here, there is no direct evidence of discrimination, a plaintiff may instead rely on circumstantial evidence. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019).[11]  Consistent with the *McDonnell Douglas* burden-shifting analysis, plaintiff must first make out a prima facie case of discrimination by demonstrating that she is disabled as defined by the ADA; that she is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and she suffered discrimination by defendant because of that disability. *See id.*  To satisfy the third prong, plaintiff must show that she has suffered an adverse employment action because of her disability.  *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1038-39 (10th Cir. 2011).  Establishing this prima facie case is not onerous.  *Aubrey*, 975 F.3d at 1014. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Tesone*, 942 F.3d at 995 (citation omitted).  If defendant proffers such a reason, the burden then shifts back to plaintiff to show that the defendant's stated reasons are pretextual. *Id.* (citation omitted).

As a threshold matter, defendant asserts that plaintiff cannot seek relief for any purported "adverse employment actions" other than the termination of her employment and the purported existence of a hostile work environment because she has not exhausted her administrative

---

[11] Plaintiff asserts that she has direct evidence of disability discrimination.  In support of this argument, she references Ms. Frack's August 23, 2018 email to Ms. Hempler in which she wrote, "I cannot justify a department supervisor/manager position that isn't even working enough that she has to take leave without pay."  Direct evidence proves the existence of a fact in issue without inference or presumption. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019). Because Ms. Frack's email was written more than 5 months before the termination decision and fails to show that Ms. Frack actually based the termination decision on plaintiff's disability (as opposed to general attendance issues), the email does not constitute direct evidence of disability discrimination.  *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (explaining what type of evidence qualifies as direct evidence in employment case).

remedies with respect to any other discrete claims of discrimination.  The court does not construe the pretrial order as attempting to set forth any discrete claims of discrimination beyond plaintiff's termination and the existence of a hostile work environment.  While plaintiff does list a number of allegedly discriminatory acts in the pretrial order, those are enumerated as examples of the way in which defendant created a hostile work environment. See PTO ¶ 4(a)(ii) ("The Hospital created a hostile work environment . . . by giving her attendance points, secretly disciplining her for purported attendance issues . . . .").  Moreover, while her response is not entirely clear, plaintiff does not express an intent to assert these other actions as discrete claims but only as evidence to support her discrete claims.[12]  The court, then, turns to the parties' motions for summary judgment as they relate to plaintiff's two viable theories of disability discrimination.

### 1.  Hostile Work Environment

A plaintiff claiming a disability-based hostile work environment "must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)).  In assessing whether a plaintiff has made the requisite showing, the court looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether

---

[12] In any event, as explained below in connection with plaintiff's ADA retaliation claim, the other actions listed in this section of the pretrial order cannot form the basis of a discrete claim of disability discrimination because they were not included in the charge of discrimination or are duplicative of plaintiff's failure-to-accommodate claim.

it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

In the pretrial order, plaintiff asserts that defendant created a hostile work environment based on plaintiff's disability by "giving her attendance points, secretly disciplining her for purported attendance issues; putting her on a rigid schedule that did not accommodate her needs; reducing her full-time employment to a part-time schedule; refusing to give her a letter of support; refusing to engage in the interactive process, searching her email and computer usage; and terminating her employment."  In her response to defendant's motion for summary judgment, however, plaintiff appears to abandon many of these allegations, focusing exclusively on defendant's failure to accommodate her disability and to engage in the interactive process, as well as defendant's alleged failure to provide her notice of her FMLA eligibility; failure to provide her proper written notices under the FMLA; failure to guide her through the medical certification process; and "treating her like she was a burden."

The court begins, then, by determining what allegations might properly form the basis of plaintiff's hostile work environment claim.  In the context of this case, defendant's failure to accommodate plaintiff's disability—including its decision to place her on a rigid, part-time schedule and its purported refusal to engage in the interactive process—is a discrete act that does not  fall within the confines of a hostile work environment claim.  *See Stewart v. Ross*, 2020 WL 1907471, at *16 (E.D. Va. Apr. 17, 2020), *aff'd*, 833 Fed. Appx. 995 (4th Cir. 2021) (courts have frequently found failures to accommodate, even when accompanied by other allegedly hostile conduct, insufficient to state a hostile work environment claim because such claims are distinct

from hostile work environment claims); *Busch v. Oswayo Valley Sch. Dist.*, 2016 WL 5394085, at *9 (W.D. Pa. Sept. 27, 2016) (plaintiff could not "cobble together" distinct acts, including those acts that make up separately actionable claim for failure to accommodate, and label it a "hostile work environment" where refusal to accommodate was discrete event). Plaintiff also cannot rely on the search of her computer (which occurred after her employment was terminated) and any "secret" discipline regarding attendance to support her claim because it is undisputed that she had no knowledge of these acts during her employment. *See Hirase–Doi v. U.S. W. Commc'ns, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995), *superseded on other grounds by Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (a plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment").

That leaves only plaintiff's allegations that defendant assigned attendance points to her for missing work when those days should have been designated as FMLA leave; defendant's failure on January 25, 2019 to provide a letter of support for her to serve on a national board for the Association of Nutritional and Foodservice Professionals; defendant's purported failures to comply with certain technical requirements of the FMLA regulations; and plaintiff's testimony, without elaboration, that management treated her like she was a burden. Taken together and viewed in the light most favorable to plaintiff, no reasonable jury could conclude that plaintiff was subject to a hostile work environment based on her disability. There is nothing in the record remotely suggesting that plaintiff's work atmosphere was "permeated with discriminatory intimidation, ridicule, and insult." *See Penry*, 155 F.3d at 1261 (citation omitted). Plaintiff was not disciplined for any attendance issues (despite evidence that Ms. Frack asked HR Partners for

help in disciplining plaintiff for attendance issues). She offers no evidence that defendant's failure to provide the letter of support was particularly egregious in any way. And while defendant may have failed to follow certain FMLA regulations, there is no evidence that these failures were based on plaintiff's disability rather than some nondiscriminatory reason such as oversight. With respect to plaintiff's testimony that management "treated her like she was a burden," she offers no other evidence to elaborate on her conclusory statement. Summary judgment in favor of defendant is clearly warranted on this claim. *See Williams*, 849 F.3d at 897 (affirming grant of summary judgment on disability-based hostile work environment claim where plaintiff showed that supervisors contacted him while on medical leave for failing to adequately perform duties; disciplined him when he returned to work; took affirmative steps to prevent plaintiff's transfer to a new position; and ignored his repeated requests for help, accusing him of whining and "being a baby").

## 2. The Termination of Plaintiff's Employment

Plaintiff asserts that defendant terminated her employment on the basis of her disability. As explained in connection with plaintiff's failure-to-accommodate claim, genuine issues of material fact exist as to whether plaintiff was disabled within the meaning of the ADA and whether plaintiff was qualified, with or without reasonable accommodation, to perform the essential functions of her job. Because plaintiff, then, has set forth a prima facie case with respect to her claim that defendant terminated her employment on the basis of her disability, the court proceeds to the next step of the *McDonnell Douglas* burden-shifting analysis.

In assessing whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for the decision to terminate plaintiff's employment, the court bears in mind that the "burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc*., 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id*. According to defendant, the decision to terminate plaintiff's employment was based on plaintiff's refusal to follow the work schedule that her supervisors developed in consultation with others, or what defendant refers to as "FMLA-related insubordination." The burden of proof, then, shifts back to plaintiff to identify evidence upon which a reasonable jury could find that defendant's proffered reason is pretextual. Plaintiff has carried her burden.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id.* at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc*., 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc*., 737 F.3d 642, 655 (10th Cir. 2013).

28

Plaintiff has asserted sufficient evidence to create a triable question as to pretext. While defendant's witnesses contend that plaintiff was fired for insubordination and failing to adhere to the work schedule set in place by Ms. Frack, a jury could reasonably find that this reason was unworthy of belief. Notably, there is evidence suggesting that Ms. Frack, in email messages complaining about plaintiff's use of leave, was looking for reasons to terminate plaintiff's employment. A jury could also find discriminatory animus from defendant's apparent failure to engage in the interactive process; its blind adherence to a confusing and inconsistent Physician Certification without seeking clarification from plaintiff's medical provider; its continued insistence that the Physician Certification required a rigid three-days-per-week schedule; and its inability to explain why it formally approved (in writing) intermittent and unscheduled FMLA on January 25, 2019 but, at the same time, verbally advised her that she was required to take leave on every Tuesday and Thursday.

In its motion, defendant makes much of the fact that it relied on the expertise of HR Partners, who advised defendant that not only was the termination of plaintiff's employment lawful, but that defendant could subject itself to FMLA liability if it permitted plaintiff to work on a day when she was scheduled to take FMLA leave. Citing to cases discussing the "honest belief" doctrine, defendant suggests that plaintiff cannot establish pretext because defendant honestly believed that it could lawfully terminate plaintiff's employment. *See, e.g.*, *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017) ("Instead of asking whether the employer's reasons 'were wise, fair or correct,' the relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.'"); *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) ("[W]hen an employee is discharged because of

29

an employer's honest mistake, federal anti-discrimination laws offer no protection.") (quoting *Medley v. Polk Co.*, 260 F.3d 1202, 1208 (10th Cir. 2001)).

But the honest-belief doctrine focuses on the employer's belief in the particular facts underlying the reason or reasons for the employment decision—typically facts about the employee's conduct or performance—not in the purported legality of the employment decision. On this point, defendant directs the court to no cases supporting its argument. Moreover, the evidence, at most, shows that defendant believed that it could terminate plaintiff's employment without violating the FMLA. There is no indication that defendant considered whether—or sought advice as to whether—plaintiff's termination might run afoul of the ADA. In any event, as explained above, there are genuine issues of material fact as to whether defendant terminated plaintiff's employment based on her disability in violation of the ADA, and defendant's reliance on FMLA advice from HR Partners does not alter that analysis.[13]

## C.   *Retaliation for Requesting an Accommodation*

Because plaintiff relies on circumstantial evidence to establish her retaliation claim, the *McDonnell Douglas* burden-shifting framework applies. *Aubrey v. Koppes*, 975 F.3d 995, 1015 (10th Cir. 2020). To make out a prima facie case, plaintiff must demonstrate that she engaged in

---

[13] Defendant does not suggest that its reliance on the advice from HR Partners insulates it from liability, only that it cuts against any argument of pretext. For purposes of plaintiff's FMLA claims, defendant asserts in the pretrial order that plaintiff is not entitled to liquidated damages because defendant acted in good faith and had reasonable grounds for believing there was no violation of the statute. The court expresses no opinion at this juncture on the extent of the evidence defendant will be permitted to present at trial on this issue, particularly in light of factual disputes about the extent of the information disclosed by the hospital to HR Partners and the nature of the advice actually provided by HR Partners.

protected opposition to discrimination; a reasonable employee would have found defendant's subsequent action to be materially adverse; and a causal connection exists between the protected activity and defendant's action. *Id.* Protected activity includes requesting an accommodation and adverse action taken in close temporal proximity to protected activity may be considered in establishing a causal connection. *Id.* at 1015-16 (citations omitted). If plaintiff establishes a prima facie case of retaliation, defendant must articulate a legitimate, nonretaliatory reason for the materially adverse action. *Id.* at 1016. The burden then shifts back to plaintiff to demonstrate that defendant's reason was merely a pretext for retaliating against her for seeking an accommodation for her disability. *Id.*

In the pretrial order, plaintiff purports to identify numerous materially adverse actions in connection with her ADA retaliation claim. Defendant urges that several of these actions were never mentioned in plaintiff's charge of discrimination and, thus, plaintiff cannot rely on those actions as discrete claims of retaliation. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (each discrete incident of discriminatory or retaliatory treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted) (citing *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003) (unexhausted claims involving discrete employment actions are no longer viable, including termination claims arising after a charge of discrimination has been filed)). These actions include defendant's "giving her attendance points, secretly disciplining her for purported attendance issues, . . . refusing to give her a letter of support, [and] searching [her] email and computer usage." The court agrees that these discrete acts are not included in plaintiff's detailed charge of discrimination. The court, then, grants summary

judgment in favor of defendant to the extent plaintiff intends to assert discrete claims of retaliation based on these allegedly materially adverse actions.

Plaintiff also asserts in the pretrial order that defendant retaliated against her for requesting an accommodation by "putting her on a rigid schedule that did not accommodate her needs" and "reducing her full-time position to a part-time schedule." But these allegations are superfluous in light of her failure-to-accommodate claim. *Bee v. District of Columbia*, 2020 WL 4530581, *4 (D.D.C. Aug. 6, 2020) (denying leave to amend complaint to add retaliatory failure-to-accommodate where claim was duplicative of failure-to-accommodate claim and motive was irrelevant); *Harris v. Carrier Corp.*, 2017 WL 4037658, at *6 (S.D. Ind. Sept. 13, 2017) ("[D]istrict courts across the Seventh Circuit have recognized that "[a] 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim," because otherwise "almost every failure to accommodate claim would be simultaneously a retaliation claim.") (quoting *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) (collecting cases)).

Thus, the only viable ADA retaliation claim set forth in the pretrial order is the one based on defendant's termination of plaintiff's employment. With respect to this claim, defendant does not challenge the elements of plaintiff's prima facie case. It argues only that plaintiff cannot show that defendant's proffered reason for the termination decision is pretextual. As noted earlier, defendant contends that it terminated plaintiff's employment because she refused to follow the work schedule that her supervisors developed in consultation with others. The burden of proof, then, shifts back to plaintiff to identify evidence upon which a reasonable jury could reasonably find that defendant's proffered reason is pretextual. The court concludes that plaintiff has met her

burden of coming forward with evidence from which a reasonable jury could conclude that defendant's proffered reason is pretextual such that it could also conclude that defendant terminated plaintiff's employment in retaliation for plaintiff's accommodation request.[14]

The court has described above the types of evidence that the Circuit has found probative of pretext.  Such evidence exists here.  The evidence viewed in plaintiff's favor supports an inference that plaintiff sought intermittent leave to address issues relating to her Crohn's disease, including scheduled time off for any necessary surgeries, scheduled medical appointments and any flare-ups through May 2019.  The short span of time between defendant's apparent approval of this request (as noted on the January 25, 2019 Designation Notice) and the termination of plaintiff's employment, together with evidence (viewed in the light most favorable to her) that defendant terminated plaintiff when she refused to take more leave than was medically necessary, is sufficient to create a genuine dispute of material fact as to pretext on plaintiff's ADA retaliation claim.  Additional evidence buttresses plaintiff's showing of pretext, including the fact that defendant, on January 25, 2019, approved "unscheduled" leave for plaintiff and recognized on the Designation Notice that it was "not possible to provide the hours, days or weeks that will be counted against your FMLA entitlement at this time" but, in the same meeting, told plaintiff that she was required to adhere to a firm Monday-Wednesday-Friday work schedule.  There is also evidence from which a jury could reasonably conclude that Ms. Frack—the decisionmaker on plaintiff's termination—was growing increasingly aggravated with plaintiff's need for leave, including Ms. Frack's August 2018 email indicating that she could not "justify" a manager who

---

[14] The parties analyze plaintiff's pretext evidence with respect to all of her discharge claims together, suggesting that the result would be the same for all claims.

had to take leave without pay because she had used up her paid leave and her December 2018 indicating that plaintiff's "not working" had gone on a long time.

Because the evidence viewed in the light most favorable to plaintiff would clearly permit a reasonable jury to conclude that defendant terminated plaintiff in retaliation for plaintiff's accommodation request, summary judgment is denied and a jury must resolve this claim.


## IV.    Plaintiff's FMLA Claims

The FMLA allows a qualified employee to take up to twelve weeks of leave for a "serious health condition."  *Dewitt v. Southwestern Bell Tel. Co*., 845 F.3d 1299, 1318 (10th Cir. 2017) (citing 29 U.S.C. § 2612(a)(1)(D)).  The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  *Sabourin v. University of Utah*, 676 F.3d 950, 957 (10th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)).  An employer's violation of this provision gives rise to an "interference" claim under the FMLA.  *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012).  The FMLA also forbids an employer from discharging or otherwise discriminating against an employee for opposing any practice made unlawful by the FMLA or for taking leave under the FMLA.  *Smothers v. Solvay Chem., Inc*., 740 F.3d 530, 539–40 (10th Cir. 2014) (citing 29 U.S.C. § 2615(a)(2)).  An employer's violation of this provision gives rise to a retaliation claim under the FMLA.  *Id*. at 540.

In the pretrial order, plaintiff asserts interference and retaliation claims under the FMLA. Defendant moves for summary judgment on all claims.  Plaintiff moves for summary judgment on her FMLA interference claim.  As will be explained, the court grants summary judgment in

favor of defendant on all FMLA claims other than those based on the termination of plaintiff's employment.  Plaintiff's FMLA interference and retaliation claims based on her termination must be tried to a jury in light of material factual disputes underlying each of those claims. [15]


*A.  Claims Based on Actions Other Than Termination*

In the pretrial order, plaintiff asserts FMLA interference and retaliation claims on a variety of actions allegedly taken by defendant other than the termination of plaintiff's employment, including failing to timely advise plaintiff of her eligibility for FMLA leave; failing to provide plaintiff with written notice of her rights and responsibilities under the FMLA; requesting medical certification when it was unnecessary; failing to inform plaintiff in writing what needed to be corrected in her FMLA paperwork; giving her attendance points; disciplining her for attendance issues; refusing to give her a letter of support; searching her email and computer; and requiring her to work a fixed schedule.  Defendant contends that summary judgment is required on all FMLA claims other than those based on the termination of plaintiff's employment because plaintiff has not alleged any actual monetary losses as a result of any other alleged FMLA violations.  *See* 29 U.S.C. § 2617(a)(1); *see Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 740 (2003) ("the cause of action under the FMLA is a restricted one:  The damages recoverable are strictly defined and measured by actual monetary losses.").  The court agrees.

---

[15] Plaintiff moves for summary judgment on several discrete issues, asking the court to find as a matter of law that plaintiff had a serious health condition under the FMLA; that she was qualified to perform her job for purposes of the FMLA; that defendant did not timely request medical certification of plaintiff's need for leave; and that defendant did not give her timely notice of her eligibility for FMLA leave.  Plaintiff, however, has not explained how these issues are material to a resolution of her viable FMLA claims.  The motion is denied.

Recovery under the FMLA is "unambiguously limited to actual monetary losses." *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001). Thus, the Tenth Circuit has held that a plaintiff who has suffered no loss of income and has not incurred any costs as a result of an alleged FMLA violation has no viable claim under the FMLA. *See id.* (where plaintiff admittedly suffered no actual monetary losses as a result of alleged FMLA violation, summary judgment in favor of defendant was required because plaintiff had no grounds for relief under statute); *Nebeker v. National Auto Plaza*, 643 Fed. Appx. 817, 823-24 (10th Cir. 2016) (no FMLA claim based on defendant's failure to advise plaintiff about FMLA eligibility or creation of hostile work environment about taking leave where plaintiff had no evidence of monetary loss sustained as a result of violations); *see also Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 n.8 (10th Cir. 2006) (plaintiff "properly" focused her FMLA interference claim on her termination, rather than other actions of defendant, because "only her termination caused her to suffer lost compensation and other actual monetary losses"). Even a technical violation of the regulations implementing the FMLA does not create an actionable FMLA claim unless the plaintiff suffers prejudice from the violation:

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

In response to defendant's motion for summary judgment, plaintiff concedes that, for purposes of her FMLA claims, she is only seeking damages related to the termination of her employment. Moreover, plaintiff does not allege anywhere in the voluminous briefs in the record that she has sustained any actual monetary losses with respect to any alleged actions taken by defendant other than the termination of her employment. Because plaintiff has not established that she incurred any damages attributable to any decision other than the termination decision, summary judgment in favor of defendant is warranted on all other FMLA claims. *See Trupp v. Roche Diagnostics Corp.*, 440 F. Supp. 3d 990, 1002 (S.D. Ind. Feb. 24, 2020) (granting summary judgment on FMLA claims where plaintiff conceded that she had no claim for past or current lost wages nor did she incur any actual monetary damages).[16]

B.      *Interference Theory*

Plaintiff claims that defendant interfered with her FMLA rights by terminating her employment after plaintiff exercised or attempted to exercise her FMLA rights. An FMLA interference claim consists of three elements: plaintiff was entitled to FMLA leave; defendant took an adverse action that interfered with plaintiff's right to take leave; and the adverse action was related to the exercise or attempted exercise of her FMLA rights. *See Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014). If plaintiff can demonstrate that the first two elements are satisfied, then defendant bears the burden of demonstrating that the adverse action "was not related to the exercise or attempted exercise" of plaintiff's FMLA rights. *Id.* A

---

[16] The court expresses no opinion on the extent to which plaintiff may be able to admit evidence of these other alleged acts to support her viable FMLA claims.

deprivation of these rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does not apply. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017). Defendant concedes that plaintiff can establish the first two elements of her FMLA interference claim and the court proceeds directly to the third element—whether plaintiff's termination was related to the exercise or attempted exercise of her FMLA rights.[17]

In meeting its burden of demonstrating that plaintiff's termination "was not related to the exercise or attempted exercise" of her FMLA rights, defendant highlights that it is not required to show that the termination decision and plaintiff's attempted exercise of her FMLA rights are completely and entirely unrelated. Indeed, the Tenth Circuit has recognized that an "indirect causal link between dismissal and FMLA leave is an inadequate basis for recovery." *See Dalpiaz*, 760 F.3d at 1132. In *Dalpiaz*, the Circuit explained by way of example that "if an employee's work-performance problems are related to the same illness that gave rise to FMLA leave, the

---

[17] It is unclear whether defendant disputes that it carries the burden of proof on the third element of an FMLA interference claim. While the court acknowledges that the Circuit's precedent is inconsistent with respect to its statement of the burden of proof in an FMLA interference claim, the court is convinced by a thorough review of those cases that the Circuit places the burden of proof on the employer with respect to the third element. *See Dalpiaz v. Carbon County*, 760 F.3d 1126 (10th Cir. 2014) (employer bears burden on third element); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 (10th Cir. 2007) (same), *Janczak v. Tulsa Winch*, 621 Fed. Appx. 528, 531 (10th Cir. 2016) (same); *but see DeFreitas v. Horizon Inc. Mgmt. Corp.*, 577 F.3d 1151, 1160 (10th Cir. 2009) (considering plaintiff's burden of proving relatedness before considering affirmative defense that termination would have occurred regardless of FMLA leave). In this case, the distinction has little practical effect on the resolution of defendant's motion because even if the burden is on plaintiff to prove relatedness, the court would find that she met her burden based solely on the fact that defendant terminated her employment four days after approving her leave and within hours of what a jury might reasonably conclude as plaintiff's objection to defendant's forcing her to use more FMLA leave than was medically necessary. *See Janczak v. Tulsa Winch, Inc.*, 2016 WL 11650894, at *2 (N.D. Okla. June 3, 2016) (even if court placed burden to prove third element on plaintiff, that burden is "slight and is often satisfied by showing of temporal proximity").

employee may still be terminated based on his work-performance problems, regardless of the indirect causal link between the FMLA leave and the adverse decision." *Id.* (citing *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir.2002)).   Similarly, "if an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally 'related to' the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave." *Id.* at 1132-33 (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877–78 (10th Cir. 2004)).

Defendant, then, relies on *Dalpiaz* for its argument that terminating plaintiff for what it calls "FMLA-related insubordination" was lawful.   But the facts of *Dalpiaz* are distinguishable from those presented here.   In that case, the Circuit affirmed the district court's conclusion that the plaintiff's interference claim failed as a matter of law because the defendant "successfully established that Plaintiff would have been dismissed regardless of her request for an FMLA leave." 760 F.3d at 1133.   As the Circuit summarized:

> [T]the evidence in the record demonstrates the county believed Plaintiff acted insubordinately by choosing to submit her FMLA forms at almost the literal last minute, more than seven weeks after the county made its first request for these forms to be submitted as soon as possible and after several reminders that the county was still waiting for the forms. Since these were forms for FMLA leave, there is an indirect causal link between Plaintiff's exercise of FMLA leave and the ultimate termination decision. However, this does not prove her termination was "related to" her exercise of FMLA leave as that term is defined by our precedents. The undisputed evidence in the record indicates that the county was concerned with Plaintiff's failure to comply with her supervisor's direction to submit necessary paperwork as soon as possible, not with the fact that this paperwork included a request for FMLA leave. Because the evidence indicates the county would have made the same adverse decision for the same type of conduct outside of the FMLA context, the county has met its burden of showing that Plaintiff's termination was not legally related to her request for FMLA leave.

39

*Id.* at 1134.

Defendant here contends that plaintiff was terminated not for taking or requesting FMLA leave, but for disobeying her supervisor's direct order that she not come into work on a day that was designated as FMLA leave.  Defendant argues that, regardless whether that decision was mistaken in hindsight, it is protected from FMLA liability because the decision was based on a sincere belief that permitting plaintiff to work on Tuesday would itself interfere with plaintiff's FMLA rights.  But this situation is not like *Dalpiaz*, where the events that led to the plaintiff's termination were entirely within the plaintiff's control and she failed to comply with reasonable, legitimate requests from her supervisor.  Here, a reasonable jury could find that defendant unilaterally and unreasonably placed plaintiff on a part-time, fixed schedule which would have required her to use more FMLA leave time than was medically necessary.  *See* 29 C.F.R. § 825.204(c) (employer can transfer employee to part-time schedule only if the employee is not required to take more leave than medically necessary).  Moreover, a jury could reasonably conclude that, by forcing plaintiff to take FMLA leave on Tuesdays and Thursdays regardless of any medical necessity and then terminating her employment when she was unwilling to agree to that forced leave, defendant unlawfully interfered with plaintiff's FMLA rights.  *See Ferguson v. Williamson Cty. Dep't of Emergency Commc'ns,* 18 F. Supp. 3d 947, 956 (M.D. Tenn. 2014) (factual record as set forth by both parties reflected material disputes over the amount of intermittent leave that was "medically necessary" for plaintiff to take and whether County discriminated against plaintiff in requiring her to take intermittent leave); *Jadwin v. County of Kern*, 610 F. Supp. 2d 1129, 1170 (E.D. Cal. 2009) (denying both parties' motions for summary

judgment on FMLA interference claim where triable issue remained as to whether County forced employee to take full-time FMLA leave even though he was entitled to a reduced leave schedule).

Because genuine issues of material fact exist with respect to whether plaintiff's termination was related to the exercise or attempted exercise of her FMLA rights, neither party is entitled to summary judgment on this claim and it must be resolved by a jury.

C.     *Retaliation Theory*

Plaintiff claims that defendant retaliated against plaintiff for exercising her FMLA rights by terminating her employment.  Unlike plaintiff's FMLA interference claim, plaintiff's FMLA retaliation claim is subject to the burden-shifting analysis of *McDonnell Douglas*.  *See Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017).  To establish a prima facie case with respect to this claim, plaintiff must first show that she engaged in protected activity; that defendant took an action that a reasonable employee would have found materially adverse; and that a causal connection exists between the protected activity and the adverse action.  *See id.*  Once plaintiff "successfully asserts a prima facie retaliation case, the burden shifts to the defendant to 'offer a legitimate, non-retaliatory reason for the employment action.  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.'"  *Id.* at 1319 (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)).

In support of its motion for summary judgment, defendant asserts that plaintiff cannot establish that its legitimate, non-retaliatory reason for terminating plaintiff's employment is

pretextual.[18]   As noted earlier, defendant asserts that the decision to terminate plaintiff's employment was based on plaintiff's refusal to follow the work schedule that her supervisors developed in consultation with others, or what defendant refers to as "FMLA-related insubordination."  The burden of proof, then, shifts back to plaintiff to identify evidence upon which a reasonable jury could reasonably find that defendant's proffered reason is pretextual for FMLA retaliation.  Plaintiff has carried her burden.

Because plaintiff's ADA retaliation claim and her FMLA retaliation claim both involve the same request for leave and are clearly intertwined, the court's analysis of the ADA retaliation claim controls here.  As explained in connection with that claim, plaintiff has come forward with evidence sufficient to permit a reasonable jury to conclude that defendant terminated plaintiff's employment in retaliation for her leave request and, more precisely for purposes of her FMLA retaliation claim, her refusal to take more FMLA leave than was medically necessary.  It is undisputed that defendant terminated plaintiff's employment within hours of what a reasonable jury might view as plaintiff's refusal to take more FMLA leave than medically necessary.  And defendant admits that it terminated plaintiff's employment for "FMLA-related insubordination." While a jury might conclude that plaintiff in fact was insubordinate and that the termination of her employment did not violate the FMLA, a jury might also conclude that defendant terminated plaintiff's employment to punish her for objecting to defendant's unilateral leave schedule that required plaintiff to take more FMLA leave than was medically necessary.  Viewing this evidence

---

[18] While defendant contends that plaintiff cannot establish a prima facie case of FMLA retaliation with respect to her claims based on alleged actions other than the termination of employment, it does not contest the prima facie elements with respect to plaintiff's termination-based retaliation claim.

through the additional lens of Ms. Frack's frustration with plaintiff's absences, plaintiff's FMLA retaliation claim clearly requires a trial.

## V. After-Acquired Evidence

In the pretrial order, defendant asserts that plaintiff's damages are limited under the after-acquired evidence doctrine because defendant, after plaintiff's termination, discovered that plaintiff was using defendant's computers and other devices to make disparaging comments about defendant and its managers; forwarding confidential information (such as records and passwords) to plaintiff's personal email account for personal purposes; and using defendant's email system for personal purposes. A defendant seeking to limit a plaintiff's damages under this theory must show that the misconduct was "serious enough to justify discharge" and that in fact it "would have discharged" the plaintiff on those grounds. *See Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009) (citations omitted).

Plaintiff moves for summary judgment on this issue based on Ms. Frack's testimony that plaintiff would not have been terminated for performing non-work tasks on her work computer; would not have been terminated for sending passwords to her personal email account; and would not have been terminated for sending allegedly disparaging comments through defendant's messaging app. In response, defendant concedes that it would not have terminated plaintiff's employment based solely on any one of those issues, standing alone. But defendant argues that Ms. Frack was not asked and did not speak to whether defendant would have terminated plaintiff's employment based on the combination of issues it discovered after the termination of her employment.

Toward that end, defendant, in response to plaintiff's motion for summary judgment, submits the affidavit of Ms. Frack, who avers as follows:

> Although I may not have terminated Ms. Johnson's employment for each individual later-discovered offense of using Hospital computers to make disparaging comments, forwarding confidential information to an unprotected account, or using the Hospital email system for personal purposes, the combination of these offenses would have justified firing her.

As plaintiff highlights in her reply, however, Ms. Frack does not aver that in fact she would have terminated plaintiff's employment for these offenses—only that she would have been justified in doing so. Tenth Circuit precedent makes clear that an employer must prove not only that termination of employment would have been justified, but also that the employee in fact would have been terminated. Because defendant has come forward with no evidence from which a jury could reasonably conclude that it would have terminated plaintiff's employment for the infractions discovered by defendant after it discharged plaintiff, summary judgment in favor of plaintiff is warranted. *See Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995) (*McKennon* makes clear that an employer must demonstrate that the misconduct was serious enough to justify discharge and that it would have discharged the employee if it had known about it); *see also McNicholas v. Loyola Marymount University*, 2018 WL 6307883, at *1 (C.D. Cal. Sept. 19, 2018) (granting plaintiff's motion for partial summary judgment on affirmative defense of after-acquired evidence where defendant failed to come forward with evidence that it would have terminated the plaintiff had it been aware of infractions; evidence that it "most likely would have" terminated the plaintiff was insufficient); *EEOC v. Scion Dental Inc*., 2018 WL 6069689, at *3 (E.D. Wisc. May 7, 2018) (granting summary judgment in favor of EEOC on after-acquired evidence defense where defendant failed to demonstrate that it would have terminated employee based on misconduct).

## VI.     Place of Trial

Lastly, the court addresses defendant's unopposed motion to amend the pretrial order to change the trial location from Topeka, Kansas to Salina, Kansas.  In support of the motion, defendant highlights that the local rules authorize holding court in Salina, Kansas and that Norton County is within the Salina jury division.  *See* D. Kan. Rule 38.1(a)(6).  Defendant further asserts that moving the trial to Salina, Kansas satisfies the relevant factors of the Rule 16(e) analysis for modifying the pretrial order—there is no prejudice or surprise to plaintiff, who does not oppose the motion; there is no bad faith alleged; and moving the trial will contribute to an orderly and efficient trial by reducing the burden on the parties and witnesses, who are located primarily in and near Norton.  Defendant also argues that trial in Salina will increase the likelihood that the case will be decided by a jury of the parties' peers, emphasizing that Norton is a rural community with 2800 residents and Topeka is one of the five largest cities in the state.

The court is not bound by the requests for place of trial and may determine the place of trial in its discretion. D. Kan. Rule 40.2(e).  Exercising this discretion, the court denies the motion. While the local rules recognize that the court is authorized to hold trial in Salina, it does not regularly do so and it does not have a courthouse or staff located there.   Holding court in Salina requires the court to import its staff (a courtroom deputy and a law clerk) from Kansas City for several nights and to make provisions for a court reporter.  Doing so would cost the public several thousands of dollars.  The court cannot justify that expense based on the arguments set forth in defendant's motion.  While the court understands that Topeka may be less convenient for the parties and witnesses, it cannot conclude that it is so inconvenient that moving the trial to Salina

is warranted in light of the expense to the public.  Moreover, the court is not persuaded that this case requires resolution by a jury selected from a rural community.  Defendant does not explain why it believes that it should be resolved by jurors selected from a rural community or how it might be prejudiced if this case is tried to jurors from the counties encompassed by the Topeka division.  In the court's view, the employment-related issues left for trial are garden variety, universal issues that jurors from any community within the District can understand and competently resolve.  The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment on all claims (doc. 80) is **granted in part and denied in part**; plaintiff's motion for partial summary judgment (doc. 82) is **granted in part and denied in part**; defendants' unopposed motion to modify the pretrial order to change the trial location (doc. 79) is **denied**; and defendants' motion to strike (doc. 85) plaintiff's proposed summary judgment facts contained within her motion for partial summary judgment is **denied**.

**IT IS SO ORDERED.**

Dated this 23rd  day of July, 2021, at Kansas City, Kansas.

_s/ John W. Lungstrum_
John W. Lungstrum
United States District Judge

46